**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (AZ Bar No. 030204)
Christopher J. Bendau (AZ Bar No. 032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Fax: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
      chris@bendaulaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Steven Preston** and **Darren Treanor,** Individually, and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> **XPO Logistics, Inc.**; **XPO Logistics, LLC**; **Pioneer VNS, Inc.**; and **Greg Lyon and Jane Doe Lyon**, a Married Couple, <br><br> Defendants. | No. _____ <br><br> **COLLECTIVE ACTION COMPLAINT PURSUANT TO 29 U.S.C. § 201, *et seq.*** |

Plaintiffs, Steven Preston and Darren Treanor ("Plaintiffs"), sue the Defendants, XPO Logistics, Inc.; XPO Logistics, LLC; Pioneer VNS, Inc.; and Greg Lyon and Jane Doe Lyon (collectively "Defendants") and allege as follows:

## PRELIMINARY STATEMENT

1.     This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. and Ohio Revised Code Ann. ("ORC") § 4111 for Defendants' failure to pay Plaintiff all earned overtime wages.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

2.      The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." <u>Barrentine v. Ark Best Freight Sys. Inc.</u>, 450 U.S. 728, 739 (1981).  Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks.  <u>See</u> 29 U.S.C. § 206(a).  Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  <u>See</u> 29 U.S.C § 207.

3.      Plaintiffs bring this action on behalf of themselves and all similarly-situated current and former employees of Defendants who were Drivers, Installers, and Drivers' Helpers[1] classified by Defendants as independent contractors and not paid one and one-half times their regular rates of pay for time worked in excess of 40 hours in a given workweek.

4.      Plaintiffs, individually, and on behalf of all others similarly-situated, bring this action against Defendants for their unlawful failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

5.      Plaintiffs bring a collective action under the FLSA to recover the unpaid overtime owed to them individually and on behalf of all other similarly-situated employees, current and former, of Defendants.  Members of the Collective Action are referred to as the "Collective Members."

---

[1]      For the purposes of this Complaint, "Drivers, Installers, and Drivers' Helpers" is exclusively a job title used for the purpose of classifying the putative class of similarly situated individuals, is not necessarily the job title of Plaintiffs and putative class, and has no bearing or relation to any specialization, skill, education, training, or other qualification that might otherwise be associated with such a job title.

6.     The Collective Members are all current and former employees who worked as Drivers, Installers, and Drivers' Helpers for Defendants and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

7.     Defendants own, operate, or otherwise manager companies that contract with Lowe's stores to deliver products purchased by Lowe's customers.

8.     At all relevant times, Defendants have operated pursuant to a policy and practice of intentionally misclassifying Plaintiffs and all other similarly-situated employees as independent contractors.

9.     At all relevant times, pursuant to this misclassification, Defendants have willfully failed or refused to pay overtime to their workers.

10.     In willfully refusing to pay overtime, Defendants have violated the overtime provisions of 29 U.S.C. § 207.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiffs occurred within the District of Arizona, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

# PARTIES

13.     At all material times, Plaintiff Steven Preston is an individual residing in Maricopa County, Arizona, and is a former employee of Defendants.

14.     At all material times, Plaintiff Darren Treanor is an individual residing in Maricopa County, Arizona, and is a former employee of Defendants.

15.     At all material times, Plaintiffs regularly performed work for Defendants in Maricopa County, Arizona.

16.     At all material times, Defendant XPO Logistics, Inc. is a Delaware corporation licensed to transact business in the State of Arizona.  At all material times, Defendant XPO Logistics, Inc. does business, has offices, and/or maintains agents for the transaction of its customary business in Maricopa County, Arizona.

17.     At all material times, Defendant XPO Logistics, Inc. is a corporation licensed to transact business in the State of Arizona.  At all material times, Defendant XPO Logistics, Inc. does business, has offices, and/or maintains agents for the transaction of its customary business in Maricopa County, Arizona.

18.     At all material times, Defendant XPO Logistics, Inc. does business as "XPO Logistics."

19.     At all relevant times, Defendant XPO Logistics, Inc. is an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant XPO Logistics, Inc. had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs'

1   employment with Defendants.  As a person who acted in the interest of Defendants in

2   relation to the company's employees, Defendant XPO Logistics, Inc. is subject to liability

3   under the FLSA.

4       20.     At all material times, Defendant XPO Logistics, LLC is a Delaware limited

5   liability company licensed to transact business in the State of Arizona.  At all material

6   times, Defendant XPO Logistics, LLC does business, has offices, and/or maintains agents

7   for the transaction of its customary business in Maricopa County, Arizona.

8       21.     At all material times, Defendant XPO Logistics, LLC is a limited liability

9   company licensed to transact business in the State of Arizona.  At all material times,

10  Defendant XPO Logistics, LLC does business, has offices, and/or maintains agents for

11  the transaction of its customary business in Maricopa County, Arizona.

12      22.     At all material times, Defendant XPO Logistics, LLC does business as

13  "XPO Logistics."

14      23.     At all relevant times, Defendant XPO Logistics, LLC is an employer under

15  the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in

16  the interest of an employer in relation to an employee.  At all relevant times, Defendant

17  XPO Logistics, LLC had the authority to hire and fire employees, supervised and

18  controlled work schedules or the conditions of employment, determined the rate and

19  method of payment, and maintained employment records in connection with Plaintiffs'

20  employment with Defendants.  As a person who acted in the interest of Defendants in

21  relation to the company's employees, Defendant XPO Logistics, LLC is subject to

22  liability under the FLSA.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

24.     On information and belief, at all material times, Defendant Pioneer VNS, Inc. is a California corporation authorized to transact business in the State of Arizona. On information and belief, at all material times, Defendant Pioneer VNS, Inc. does business, has offices, and/or maintains agents for the transaction of its customary business in Maricopa County, Arizona.

25.     On information and belief, at all material times, Defendant Pioneer VNS, Inc. does business as "Pioneer VNS."

26.     On information and belief, at all relevant times, Defendant Pioneer VNS, Inc. is an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant Pioneer VNS, Inc. had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Pioneer VNS, Inc. is subject to liability under the FLSA.

27.     On information and belief, Defendants Greg Lyon and Jane Doe Lyon are owners of Defendant Pioneer VNS, Inc. and were at all relevant times Plaintiff's employers as defined by the FLSA, 29 U.S.C. § 203(d).

28.     Under the FLSA, Defendant Greg Lyon and Jane Doe Lyon employers. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  Defendants Greg Lyon and Jane Doe Lyon are owners of Defendant Pioneer VNS, Inc.  At all relevant times, Defendants Greg Lyon

and Jane Doe Lyon had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants.  As persons who acted in the interest of Defendants in relation to the company's employees, Defendants Greg Lyon and Jane Doe Lyon are subject to individual liability under the FLSA.

29.     At all material times, Defendants XPO Logistics, Inc.; XPO Logistics, LLC; Pioneer VNS, Inc.; and Greg Lyon and Jane Doe Lyon are Plaintiffs' "employer" as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

30.     Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiffs' work and wages at all relevant times.

31.     At all material times: (1) Defendants were not completely disassociated with respect to the employment of Plaintiffs; and (2) Defendants were under common control.  In any event, at all relevant times, all Defendants were joint employers under the FLSA.

32.     Defendants are engaged in related activities, *i.e.* all activities which are necessary to the operation and maintenance of the delivery of items purchased by Lowe's customers to those customers' chosen destinations.

33.     Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

34.     Plaintiffs, in their work for Defendants, were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

35.     At all relevant times, Plaintiffs, in their work for Defendants, were engaged in commerce or the production of goods for commerce.

36.     At all relevant times, Plaintiffs, in their work for Defendants, were engaged in interstate commerce.

37.     Plaintiffs, in their work for Defendants, regularly handled goods produced or transported in interstate commerce.

## NATURE OF THE CLAIM

38.     Defendants XPO Logistics, Inc.; XPO Logistics, LLC; and Pioneer VNS, Inc. are logistics and delivery companies that contract with retail stores–in this case, Lowe's–to deliver goods and products that customers purchase from Lowe's.

39.     Plaintiff Steven Preston was hired by Defendants and worked for Defendants as a Driver and Installer from approximately March 2021 through approximately July 2021.

40.     At all relevant times, in his work for Defendants, Plaintiff Steven Preston worked for Defendants as a Driver and Installer, performing deliveries of items to customers who had purchased those items from Lowe's.

41.     Defendants, in their sole discretion, agreed to compensate Plaintiff Steven Preston at a flat rate of $190.00 per day regardless of the number of hours he worked in a given workweek.

42.     Plaintiff Steven Preston typically worked between 60 and 70 hours in a given workweek.

43.     Rather than classify Plaintiff Steven Preston as an employee, Defendants classified him as an independent contractor.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

44.     Plaintiff Darren Treanor was hired by Defendants and worked for Defendants as an Drivers Helper and Installer from approximately May 2021 through approximately July 2021.

45.     At all relevant times, in his work for Defendants, Plaintiff Darren Treanor worked for Defendants as an Installer, performing deliveries of items to customers who had purchased those items from Lowe's.

46.     Defendants, in their sole discretion, agreed to compensate Plaintiff Darren Treanor at a flat rate of $175.00 per day regardless of the number of hours he worked in a given workweek.

47.     Plaintiff Darren Treanor typically worked between 60 and 70 hours in a given workweek.

48.     Rather than classify Plaintiff Darren Treanor as an employee, Defendants classified him as an independent contractor.

49.     Plaintiffs and others similarly situated were contracted solely for the purpose of delivering and installing products sold by Lowe's to their customers.

50.     At all relevant times, Plaintiffs and the Collective Members, in their work for Defendants, were expressly limited to a delivery zone or territory of no less than approximately 100 miles.

51.     At all relevant times, Plaintiffs and the Collective Members drove, delivered, and installed the items purchased by Lowe's customers exclusively within the State of Arizona.

52.     At no time during their work for Defendants did any of the Plaintiffs or Collective Members actually crossing outside of the State of Arizona.

53.     At no time during their work for Defendants did any of the Plaintiffs or Collective Members have the reasonable possibility or likelihood of crossing outside of the State of Arizona.

54.     In their work for Defendants, Plaintiffs and others similarly situated were required to abide by rules and procedures dictated by Defendants XPO Logistics, Inc.; XPO Logistics, LLC; and Pioneer VNS, Inc.

55.     Plaintiffs and the Collective and Class Action Members work and worked for Defendants XPO Logistics, Inc.; XPO Logistics, LLC; and Pioneer VNS, Inc., who were their "joint employers" under the FLSA.

56.     Defendants XPO Logistics, Inc.'s; XPO Logistics, LLC's; and Pioneer VNS, Inc.'s direction and control regarding the manner in which Plaintiffs and the Collective Members perform work includes, but is not limited to:

a.     Defendants XPO Logistics, Inc. and XPO Logistics, LLC (the "XPO Defendants") contract with Lowe's to provide delivery services from Lowe's to Lowe's customers using delivery companies with which the XPO Defendants choose to subcontract;

b.     The XPO Defendants subcontract with companies like Defendant Pioneer VNS, Inc. to provide such delivery services on the XPO Defendants' collective behalf;

c.     The XPO Defendants essentially sell delivery territories and routes to Pioneer VNS, Inc. and other smaller trucking and delivery companies to perform such deliveries;

d.      For example, the XPO Defendants have contracted with Defendant Pioneer VNS, Inc. for Lowe's stores and warehouses in the Phoenix Metropolitan Area and, on information and belief, the Tucson, Flagstaff, and Payson Metropolitan Areas.

e.      Despite such subcontracting and selling of territories and routes, the XPO Defendants retain close control over the individuals that Pioneer VNS, Inc. and other smaller trucking and delivery companies employ to perform such deliveries;

f.      Such control includes, but is not limited to requiring Plaintiffs and the Collective Members to wear an "XPO Logistics" uniform and badge/identification bearing the XPO Logistics logo, requiring Plaintiffs and the Collective Members to use an XPO Logistics application in their work, setting territorial and route boundaries outside of which Plaintiffs and the Collective Members are prohibited from traveling, requiring Drivers, Installers, and Drivers' Helpers to consult XPO in the event of technical or mechanical issues; and monitoring, supervising, and disciplining Drivers, Installers, and Drivers' Helpers for attendance and tardiness issues;

g.      Plaintiffs and the Collective and Class Action Members hold themselves out to customers and the general public as representatives of the XPO Defendants.

57.      As a matter of common policy and practice, Defendants misclassify all of their Drivers, Installers, and Drivers' Helpers as independent contractors.

58.      Consistent with this common policy and practice, Plaintiffs and others similarly situated individuals have been intentionally misclassified by Defendants as independent contractors.

59.     As a result of Defendants' common misclassification policy, Defendants have not paid overtime pay to Plaintiffs and others similarly situated.

60.     Instead, Defendants compensated Plaintiffs and others similarly situated a flat daily rate regardless of the number of hours they work in a given workweek, and regardless of if Plaintiff and/or others similarly situated worked in excess of 40 hours in a workweek.

61.     Defendants generally required Plaintiffs and others similarly situated to work between 60 and 70 hours per week.

62.     The FLSA applied to Plaintiffs and all individuals similarly situated at all times during which they worked for Defendants.  No exceptions or exemptions to the FLSA apply to Plaintiffs and those similarly situated.

63.     Upon information and belief, Defendants employed hundreds of Drivers, Installers, and Drivers' Helpers throughout the relevant time period in the State of Arizona without paying overtime pay and while denying them the rights and benefits due an employee.

64.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiffs and similarly situated individuals.

65.     At all relevant times, the employment terms, conditions, and policies that applied to Plaintiffs were the same as those applied to other putative Collective Members who also worked as Drivers, Installers, and Drivers' Helpers for Defendants.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

66.     Plaintiffs and the putative Collective Members incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as independent contractors and failing to pay them overtime pay.

67.     Because Defendants failed to pay their employees proper wages, the putative Collective Members' income consisted solely of the flat daily rates provided by Defendants.

68.     Defendants' misclassification of Plaintiff and other putative Collective Members as independent contractors was specifically intended to enhance Defendants' profit margins at the expense of the putative Collective Members by willfully suffering and permitting Plaintiffs and the putative Collective Members to work in excess of 40 hours in a given workweek without paying overtime compensation at a rate of one and one-half times their regular rates and adopting and implementing employment policies that violate the FLSA.

69.     Defendants' misclassification of Plaintiffs and those similarly situated was willful.

70.     Defendants knew or should have known that it was improper to classify Plaintiffs and the putative Collective Members as independent contractors.

71.     Workers in the putative Collective cannot "elect" to be treated as employees or independent contractors.  Nor can workers in the putative Collective agree to be paid less than the applicable minimum wage.  Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative Collective to waive their statutory rights and elect to be treated as independent contractors.

13

72.     Any contract which attempts to have workers in the putative Collective waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

73.     The determining factor as to whether Plaintiffs and those similarly situated are employees or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

74.     Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

75.     The totality of circumstances surrounding the employment relationship between Defendants and the putative Collective establishes economic dependence by the putative Collective on Defendants and employee status.  Here, Plaintiffs and all individuals similarly situated are not in business for themselves and truly independent,

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

but rather are economically dependent upon finding employment in Defendants. The putative Collective is not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the putative Collective is the basis for Defendants' business. Defendants obtain purchases from customers of goods from a Lowe's store and are contracted by Lowe's to deliver such goods to the customers. Defendants retain pervasive control over the business operation as a whole, and putative Collective.

**Facts Establishing Degree of Control Exercised by Defendants**

76.     Plaintiffs and the other members of the putative Collective do not exert control over any meaningful part of Defendants' business operation and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiff and the other Collective Members.

77.     Plaintiffs and Collective Members' economic status is inextricably linked to conditions over which Defendants have complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

78.     Defendants exercise the following significant control over the work conditions of Plaintiffs and others similarly situated:

> a.     Defendants generally require Plaintiffs and putative Collective to work 60 to 70 hours per week;
>
> b.     Defendants pay Plaintiffs and the putative Collective a flat daily rate regardless of the number of hours worked in a given workweek and regardless if Plaintiffs and the Collective Members work in excess of 40 hours in a given workweek;

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

c.   Defendants direct Plaintiffs and the putative Collective with respect to which deliveries to perform and what types of service to provide;

d.   Defendants require Plaintiffs and the putative Collective to wear Defendants' uniforms;

e.   Defendants require Plaintiffs and the putative Collective to use forms and/or invoices Defendants provided;

f.   Defendants determined the tools and equipment Plaintiffs and the putative Collective have to use; and

g.   Defendants require Plaintiffs and the putative Collective to deliver to Defendants all invoices and customer service reports within the same day of each delivery;

**Facts Establishing No Skill or Initiative of a Person in Business for Themselves**

79.   Plaintiffs, like all members of the putative Collective, do not exercise the skill and initiative of a person in business for oneself;

80.   Plaintiffs and the putative Collective are not required to have any specialized or unusual skills to perform their jobs.  The skills used in performing delivery services are commensurate with those exercised by ordinary people.

81.   Plaintiffs, like all members of the putative Collective, do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

82.     Plaintiffs and the putative Collective have no control over customers, nor do they actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

83.     Defendants do not permit Plaintiffs and the putative Collective to hire or subcontract other qualified individuals to provide additional roadside assistance to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

**Facts Establishing Relative Investment**

84.     Plaintiffs' and the putative Collective's relative investment is minor when compared to the investment made by Defendants.

85.     Plaintiffs and the putative Collective make no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships. All capital investment and risk belong to Defendants.

86.     Plaintiffs' and the putative Collective's investment is limited to their required uniform.  Absent Defendants' investment and provision of the business, the Drivers, Installers, and Drivers' Helpers would not earn anything.

**Facts Establishing Opportunity for Profit and Loss**

87.     Defendants manage all aspects of the business operation, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff.  Defendants provide all necessary capital to open and operate the business.

88.     Neither Plaintiffs nor the putative Collective have responsibility for any aspect of Defendants' ongoing business risk.

**Facts Establishing Permanency**

89.     Plaintiff Steven Preston worked for Defendants as a Driver and Installer from approximately March 2021 through approximately July 2021.

90.     Plaintiff Darren Treanor worked for Defendants as a Driver's Helper and Installer from approximately May 2021 through approximately July 2021.

**Fact Establishing Members of the Putative Collective Are an Integral Part of Defendants' Business**

91.     Plaintiffs and the putative Collective are critical to Defendants' success. Defendants' operation is wholly dependent on the delivery services that Plaintiffs and the putative Collective provide for customers.

92.     The primary "product" or "good" Defendants are in business to sell consists of delivery services provided by members of the putative Collective.

93.     Members of the putative Collective, like Plaintiffs, are economically dependent on Defendants and subject to significant control by Defendants.

**Facts Establishing that Defendants' Acts Were Willful**

94.     All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

95.     Defendants were aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiffs and Members of the putative Collective were misclassified as independent contractors.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

96.     Employees working under conditions similar to those employed with Defendants have been determined to be employees–not independent contractors–in other FLSA cases.

97.     Despite this notice of their violations, and in an effort to enhance Defendants' profits, Defendants continued to intentionally misclassify Drivers, Installers, and Drivers' Helpers like Plaintiffs and similarly situated individuals, and knowingly suffered or permitted them to work in excess of 40 hours during a workweek without paying them overtime compensation at a rate of one and one-half times their regular rate. Such conduct was intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

## INJURY AND DAMAGE

98.     Plaintiffs and all Members of the putative Collective suffered harm, injury, and damages, including financial loss, as a result of Defendants' conduct complained of herein.

99.     Plaintiffs and all Members of the putative Collective were entitled to overtime pay for their work performed for Defendants.  By failing to pay Plaintiffs and the Members of the putative Collective overtime pay, Defendants injured Plaintiffs and the Members of the putative Collective and caused them financial loss, harm, injury, and damage.

## FLSA COLLECTIVE ACTION ALLEGATIONS

100.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

101.    Plaintiffs bring the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

102.    Plaintiffs assert those claims on behalf of themselves, and on behalf of all similarly situated Drivers, Installers, and Drivers' Helpers of Defendants, who were not paid all overtime compensation required by the FLSA during the relevant time period as a result of Defendants' compensation policies and practices.

103.    Plaintiffs seek to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

> **All Drivers, Installers, and Drivers' Helpers (or individuals with other similar job duties or titles) who worked for Defendants in the State of Arizona and were misclassified as independent contractors at any time during the past three years.**

104.    The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of the Act. 29 U.S.C. § 255.  As alleged above, Plaintiffs and similarly situated Drivers', Installers', and Drivers' Helpers' claims arise out of Defendants' willful violations of the FLSA.  Accordingly, the Court should require appropriate notice of this action be given to all individuals employed by Defendants within three years from the filing of this Complaint.

105.    Upon information and belief, Defendants have employed more than one hundred (100) Drivers, Installers, and Drivers' Helpers during the period relevant to this action.

106.    The identities of these individuals, as a group, are known only to Defendants.  Because the numerous members of this collective action are unknown to Plaintiffs, joinder of each member is not practicable.

107.    Because these similarly situated employees are readily identifiable by Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

108.    Collective adjudication is appropriate in this case because the individuals whom Plaintiffs wish to notify of this action have been employed in positions similar to Plaintiffs; have performed work similar to Plaintiffs; and have been subject to compensation practices similar to those to which Plaintiffs have been subjected, including unlawful misclassification as independent contractors and failure to pay the applicable overtime rates as required by the FLSA.

## COUNT ONE: FAIR LABOR STANDARDS ACT
## FAILURE TO PAY OVERTIME

109.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

110.    Defendants willfully failed or refused to pay Plaintiffs and the Collective Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

111.    As a result, Defendants failed to compensate Plaintiffs and the Collective Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

112.    Defendants' practice of willfully failing or refusing to pay Plaintiffs and the Collective Members at the required overtime wage rate violates the FLSA, 29 U.S.C. § 207(a).

113.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiffs and the Collective Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiffs and the Collective Members employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

114.    Plaintiffs and the Collective Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiffs, Steven Preston and Darren Treanor, individually, and on behalf of all delivery drivers similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

### <u>JURY TRIAL DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, AZ 85060

RESPECTFULLY SUBMITTED this 29th Day of July, 2021.

BENDAU & BENDAU PLLC

/s/ *Clifford P. Bendau, II*
Clifford P. Bendau, II
Christopher J. Bendau
Attorney for Plaintiff

### **Certificate of Service**

I certify that on this 29th day of July, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all parties and counsel of record by operation of the Court's electronic filing system.  The Parties may access this filing through the Court system.

/s/ *Clifford P. Bendau, II*

23